IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


CHRISTINE RYLISKIS,               )
                                  )        Civil Action No. 2:11-cv-01517
            Plaintiff,            )        Judge Arthur J. Schwab/
                                  )        Magistrate Judge Cynthia Reed Eddy
        v.                        )
                                  )
UNIONTOWN AREA HOSPITAL,          )
                                  )
            Defendant.            )
                                  )


## REPORT AND RECOMMENDATION

## I. RECOMMENDATION

    Christine Ryliskis, ("Ryliskis" or "Plaintiff"), a former operating technician at

Uniontown Area Hospital ("the Hospital" or Defendant"), filed a three Count Complaint.  In

Count I, she alleges that she was "forced to endure discrimination, harassment, unwarranted

discipline and a hostile environment based on race" in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. §2000e et seq. ("Title VII"), and the Pennsylvania Human Relations Act,

43 Pa. Con Stat. Ann. §951 et seq. ("the PHRA").[1] [ECF No. 1 at ¶7].  In Count II Plaintiff

asserts retaliation in violation of Title VII, claiming that she "was retaliated against for engaging

in protected activity that included, but was not limited to, complaints to management about the

hostile work environment, racial discrimination, and retaliatory conduct."  [Id. at ¶ 40]. Count III

includes allegations made pursuant to the PHRA that essentially mirror those made in Counts I

_____

    [1] In the ad damnum clause of this Count, Plaintiff makes a single reference to the Americans
with Disabilities Act, 42 U.S.C. §12101 et seq.  None of the allegations in her Complaint
mentions the Act or its elements.  Consequently, any ADA claim that Plaintiff intended to assert
should be dismissed. [ ECF No. 1 at ¶38(a)].

and II.  Pending is the Hospital's Motion to Dismiss Counts II and III of the Complaint pursuant to Fed. R. Civ. P. 12(b) (6) on the ground that Plaintiff filed the administrative charge underlying Count II prior to receiving a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC), and failed to timely file the PHRA administrative claim alleging retaliation within the governing time limit. As a result, the Court respectfully recommends that Count II be dismissed without prejudice, and that Count III be dismissed with prejudice.

## II.  REPORT

**The EEOC/ Title VII Framework**

"The 1972 amendments to Title VII established 'an integrated multistep enforcement procedure' prescribing the powers and duties of the EEOC once a discrimination charge has been filed.'" Patroski v. Pressley Ridge, No. 2:10-cv-967, 2010 WL 5069941 at *2 (W.D. Pa. Dec. 7, 2010) (quoting Occidental Life Ins. Co. of California v. EEOC, 432 U.S. 355, 359 (1997)).  The enforcement process is initiated with an employment discrimination charge filed with the EEOC. This charge must be filed within 180 days of the last occurrence forming the basis of the complaint. The rule is different where a complainant also initiates a complaint with a parallel state agency, as was the case here. If there is a dual filing, with a state agency is made, the time for filing a charge with the EEOC is extended to 300 days from the date of the last challenged employment practice.  See 42 U.S.C. §2000e-5(e)(1); Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 470 (3d Cir. 2001). [2] The employer must be given notice of the charge within ten days of its filing. 42 U.S.C. §2000e-5(e).

---

[2] "The EEOC and the PHRC 'have a work-sharing agreement for the initial investigation of discrimination charges.'" Booker v. Nat'l R.R. Passenger Corp., __ F.Supp. 2d __ , 2012 WL 2953721 at *8 (E.D. Pa. July 20, 2012) (quoting Kellam Indep. Charter Sch., 735 F. Supp.2d 248, 255 (E.D. Pa. 2010)).  "That, however, does not mean that a plaintiff can initiate PHRC proceedings simply by filing with the EEOC." Id. (quoting Woodson v. Scott Paper Co., 109

Once the employer has been served, the EEOC is charged with investigating whether the employee's allegations have merit. This determination must be made "as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge. Id. at §2000e-5(b). If the EEOC concludes that reasonable cause exists to credit the allegations, it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." Id. If the Commission is unable to negotiate a conciliation agreement that it deems acceptable, it may bring a civil suit against any non-governmental entity named in the charge. Id. at §2000e-5(f)(1).

Should a charge be dismissed by the EEOC, or if 180 days have elapsed without the EEOC effecting conciliation or filing suit, the EEOC is required to notify the complainant. "[W]ithin ninety days after this notification, the complainant may file a civil action against the respondent." Id. [3]

**PHRA Framework**

In most respects, the same framework is utilized to analyze employment discrimination claims under both Title VII and the PHRA. See Atkinson v. Lafayette Coll., 460 F.3d 447, 454 (3d Cir. 2006) (holding claims under PHRA are interpreted coextensively with those arising

---

F.3d 913, 926 (3d Cir. 1997). "Even after filing a charge with the EEOC, a plaintiff must take 'separate action' to have his charge filed with the PHRC." Booker, 2012 WL 2953721 at *9 (citing Kellam, 735 F. Supp.2d at 255).

[3] In 1977, the EEOC issued a regulation authorizing the Commissioner, in response to a request from a complainant, to issue a right-to-sue notice prior to the running of the 180 days. 29 C.F.R. § 1601.28(a)(2) reads:

> [A]t any time prior to the expiration of 180 days from the date of filing of the charge . . . provided that [an appropriate Commission official] has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect.

under Title VII). There are, however important differences, such as the governing statute of limitations, and the time accorded to the agency within which to resolve a complaint. In order to satisfy the statute of limitations under the PHRA, a Plaintiff must file a claim within 180 days of the last alleged discriminatory event, even where there has been a dual filing. 43 Pa. Cons. Stat. §959(h).  Furthermore, the plaintiff must wait one full year for the PHRC to act before pursuing a judicial remedy. See 43 Cons. Stat. Ann. § 962(c)(1).[4] A complainant may also file suit should the PHRC fail to send notice of its decision within a year after a charge is filed. See Burgh, 251 F.3d at 471.  Under the PHRA, an action must be filed within two years following receipt of the PHRC notification. 43 Pa. Cons. Stat. §962(c)(2). "Entrusting authority to resolve claims of employment discrimination to the PHRC, rather than the courts, is the expression of a legislative decision to keep such claims out of the courts common pleas, until the complainant exhausts her administrative remedies, and to concentrate the expertise of resolving such claims in an administrative agency." Weaver v. Harpster, 975 A.2d 555, 565-66 (Pa. 2009).

**Factual and Procedural History**

---

[4] This section provides as follows:

> In cases involving a claim of discrimination, if a complainant invokes the procedures set forth in this act, that individual's right of action in the courts of the Commonwealth shall not be foreclosed. If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act.

From approximately April 2001 until March 24, 2011, Plaintiff was employed by the Hospital as an operating room technician. She contends that throughout that period, she was forced to endure racially "discriminatory, retaliatory and harassing conduct" that was sufficiently regular and pervasive to constitute a hostile work environment, making it impossible for her to perform her job. [ECF No.1 at ¶10]. Plaintiff found the conduct of physician/manager, Dr. Stokes ("Stokes") particularly egregious. She alleges that on multiple occasions beginning in April 2010, Stokes and others sang the "soul sister" riff from the song "Lady Marmalade" while dancing like monkeys and goading Plaintiff to participate. [Id. at ¶ 11]. Although Plaintiff passed complaints about this conduct up the chain of Hospital command, nothing was done to insulate her from or halt the offensive behavior. [Id. at 12]. Plaintiff also alleges that several of her co-workers used the slur "nigger" in her presence, and again, though she complained to the Hospital's Department of Human Resources, no one intervened. [Id. at 12-13].

Plaintiff was forced to continue working with Stokes and his practice group, though management was aware of their conduct. These incidents, their frequency, and management's failure to aid Ryliskis forced her to remain in a hostile work environment. In October 2010, the Plaintiff filed a dual racial discrimination charge with the EEOC and the PHRC, claiming that the last discriminatory employment action taken against her occurred on April 26, 2010. The EEOC issued a right-to-sue-letter in connection with this charge on August 31, 2011.

In September 2010, while her first charges were pending, Ryliskis suffered an on-the-job injury, causing her to miss more than three months of work. [Id. at 20]. On November 17, 2010 while she was on medical leave and, again, during the pendency of her first charge, Ryliskis filed a more detailed *second charge* with the EEOC and the PHRC. [ECF No. 4-1 at 2]. In the second charge, Ryliskis reiterated the alleged discriminatory conduct set out in the first charge and

asserted that she had been retaliated against for complaining to Hospital staff and filing the first EEOC charge. This retaliation resulted in her constructive discharge. In the second charge, Ryliskis wrote: "On the whole, the hostility in my workplace to African Americans has been repeated to the point of being pervasive. Although I complained on numerous occasions, through the appropriate chain of command, the [Hospital] took no action of any kind to investigate, let alone remedy, the racial hostility in the workplace." [Id.] Ryliskis also noted her belief "that the [Hospital's] conduct [was] part of a plan, pattern or practice of discriminating against African American employees which may affect employees similarly situated to me." [Id.].

Ryliskis next alleged, for the first time, that when she returned to work after medical leave, just prior to Christmas 2010, she "was refused an employee badge that [was] required in order to punch the clock and to gain entrance to certain areas of the hospital." [Id.]. The Director of Human Resources failed to provide her with a badge for more than two months, making it necessary for Plaintiff to rely on others to gain access to areas of the Hospital. On March 2011, at about the same time her badge was reissued, Plaintiff was again required to work in the GI Department with those who had formerly harassed her. [Id. at 21]. Her work situation deteriorated further when the head of Human Resources reduced her hours from full to part time. When Plaintiff requested that her hours be restored, she was returned to full time, but was forced to work shifts that interfered with her scheduled physical therapy, requiring her to leave work early in order to receive treatment. [Id. at 22-23]. Each time she left for a medical appointment without a doctor's excuse, she was cited for an "occurrence," a sort "of discipline similar to a demerit." [Id. at 24]. "Plaintiff had never been informed that she needed to seek a doctor's excuse for treatment she had been receiving for at least two months." [Id. at 25]. When Ryliskis

reviewed the occurrences detailed in her personnel file, she found unspecified incorrect information.

In early March 2011, Plaintiff reported to the GI Department to relieve the operating room techs. Stokes was in the room at the time and began to mock her. [Id. at 27]. Two days later, the Head of Human Resources summoned Plaintiff in order to discuss her allegations of discrimination and harassment. The administrator's attitude distressed the Plaintiff and caused her to become fearful, because the administrator condescendingly mentioned the fact that Plaintiff had filed a charge of discrimination with the EEOC. [Id. at 28].

On March 23, 2011, Plaintiff reported to the GI Department, but was told that she was not needed. She thus reported to another area and undertook her assigned tasks. Later that afternoon, Ryliskis was confronted by the Director of Nursing who was with one of Plaintiff's frequent harassers. The Director publically accused Plaintiff of failing to cover for GI operating techs. "Plaintiff believes that [this] reprimand was given solely in order to embarrass her, discredit her work and punish her for reporting racial discrimination and harassment." [Id. at 30]. She alleges that the continued harassment, coupled with discriminatory and retaliatory conduct, resulted in her constructive discharge on or about March 24, 2011. [Id. at 33]. [5]

On November 16, 2011, 207 days after the date of her alleged constructive discharge, Plaintiff signed and shortly thereafter filed the second charge with the EEOC and the PHRC. [ECF No 4-3]. She filed this action thirteen days later.

**Standard of Review**

---

[5] Significantly, every event detailed in Plaintiff's second charge occurred during the pendency of the first charge. Plaintiff does not allege that the EEOC or the PHRA was ever apprised of these events.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6) challenges the legal sufficiency of a complaint. The United States Supreme Court has instructed that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).

In evaluating a motion to dismiss, the Court must accept as true all well-pleaded facts and allegations and draw all reasonable inferences therefrom in favor of Plaintiffs. See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Twombly, 550 U.S. at 555. The "factual allegations must be enough to raise a right to relief above the speculative level." Id. The Supreme Court clarified this requirement when it stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). The showing required to overcome a motion to dismiss must establish "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). "This 'plausibility' analysis is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

After Iqbal, the United States Court of Appeals for the Third Circuit directed that district courts conduct a three pronged analysis to determine the sufficiency of a complaint. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679). Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to

the assumption of truth" Id. Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Id.

**The Second Administrative Charge – Retaliation**

Administrative Exhaustion - Title VII

In its Motion to Dismiss, the Hospital argues first that insofar as Count II of the Complaint contains retaliation claims, those claims should be dismissed because Ryliskis failed to give the EEOC the required 180 days to investigate the validity of the second administrative charge prior to filing this federal action. The 180 day period would not have ended until May 14, 2012, months after this suit was filed. There is no question that Ryliskis failed to exhaust her administrative remedies with respect to the second charge, which was based primarily on alleged retaliation. Notice of the filing of this charge was served on the Hospital in December 2011 – after this suit was filed. The EEOC's December 21, 2011 notification offered the Hospital the opportunity to mediate the second charge through the EEOC's mediation program, and the Hospital agreed to participate. [ECF No. 4 Ex. D, E, F].

These facts demonstrate conclusively that the EEOC had not issued a right to sue letter with respect to the second charge. The Court of Appeals for the Third Circuit has held that failure to exhaust administrative remedies in Title VII cases is not jurisdictional, but is, instead, an affirmative defense akin to the statute of limitations. See Wilson v. MVM, Inc., 475 F.3d 166, 175 (3d Cir. 2007) (citing Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997)). "The receipt of the right to sue letter indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim in court under Title VII. A complainant may not bring a

Title VII suit without having first received a right-to-sue letter." <u>Burgh,</u> 251 F.3d at 470 (internal citations omitted).

Ryliskis herself characterizes the filing of this lawsuit as "premature." She also admits that at the time this case was filed, the second charge was still under investigation. [ECF No. 7 at n.1]. She argues that this prematurity is nonetheless insignificant, because her retaliation/ constructive discharge claim was "clearly a foreseeable natural consequence of the Defendant's actions," and would have been uncovered in the EEOC's investigation of her first charge.[6] In support of her argument she cites <u>Antol v. Perry</u>, 82 F. 3d 1291, 1295 (3d Cir. 1996) (stating that test for determining whether administrative remedies have been exhausted is "whether the acts alleged *in the subsequent Title VII suit* are fairly within the scope of the prior EEOC complaint or the investigation arising therefrom.") (emphasis added).

Plaintiff's argument and the cases she cites in support are inapplicable. The authority on which Ryliskis relies arose where a matter not included in an administrative charge was raised in a *court action* once the proceedings relating to the administrative charge had concluded.

When a plaintiff includes in her Complaint conduct not made part of an EEOC charge, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which could reasonably be expected to have grown out of the charge of discrimination . . . , including new acts which occurred during the pendency of the proceedings before the Commission . . . ." <u>Branum v. United Parcel Serv., Inc.</u>, 232 F.R.D. 505, 510-11 (W.D. Pa. 2005) (citing <u>Ostapowicz v. Johnson Bronze Co.</u>, 541 F.2d 394, 398-99 (3d Cir. 1976)). This analysis would have applied to Plaintiff's retaliation claim had she filed this action

---

[6] Accepting this argument would mean that the allegations raised in the second charge were, in fact, resolved in the first charge since, as the Court has noted, all of the events described in the second charge took place while the first charge was still under investigation.

after receiving the right-to-sue letter issued in connection with the first charge. Plaintiff, however, chose a different legal route. Thirteen days before filing this suit, she, represented by a trained attorney presumed to be aware of the relevant statutory requirements and their implications, elected *not* to rely on the scope of the EEOC's treatment of the first charge, but instead filed a second administrative charge focusing on retaliation. Both the EEOC and the Hospital treated this second charge as distinct from the first. This is evidenced by their agreement to engage in mediation. Ryliskis now takes the position that the second charge was "unnecessary," and that this Court should proceed as though it had never been filed. This, Plaintiff says, is because "the allegations of Charge One were sufficient standing alone to encompass a claim of constructive discharge occurring after the fact of Charge One." [ECF No. 10 at 2].

Plaintiff has not cited, and this Court has not found a shred of authority for the proposition that a Plaintiff may file two EEOC charges, one of which has not been exhausted, and then disavow the second charge and its exhaustion requirements on the theory that the first charge renders the second superfluous. Ryliskis chose to file a second charge, knowing full well that the governing statute gives the EEOC 180 days to investigate that claim. The Court agrees with the Hospital that "Ryliskis chose to file Charge Two, and must accept the consequences which flow from that fact." [Id. at 3 n.2]. One of those consequences is that, as the case now stands, Plaintiff is precluded from raising Title VII retaliation claims. Plaintiff does not discuss the status of the charge two investigation. If a right-to-sue letter has, in fact, been issued, and the ninety day period for filing suit has not expired, Plaintiff should be permitted to amend Count II of her Complaint, clarifying that her EEOC administrative remedy has been exhausted. The same

result could apply if the EEOC has not yet concluded its investigation, but Plaintiff requests and receives a right-to-sue letter.

Count III –Failure to Comply With PHRA Filing Requirements

The Hospital argues that the retaliation claims made pursuant to the PHRA in Count III must also be dismissed for failure to comply with filing requirements governing the second charge. The Hospital contends that Plaintiff's retaliation claim filed with the PHRC was untimely. Two hundred and seven days after her alleged constructive discharge, Plaintiff filed a charge with the EEOC, requesting that it be dual-filed with the PHRC. The Court in Burgess-Walls v. Brown, Civil Action No. 11-275, 2011 WL 3702458 at *3 (E.D.Pa. Aug. 22, 2011) explains the implications of this filing for Plaintiff's PHRA claim:

> In a deferral state such as Pennsylvania, plaintiffs must submit their discrimination charge to the EEOC within 300 days of the allegedly discriminatory employment action. Id. The extended limitations period applies only to the federal discrimination claims, however. Rosenberg v.Vuotto, No. 10–3526, 2010 WL 4259596 at *9 (E.D.Pa. Oct. 26, 2010) (citing Woodson, 109 F.3d at 916. To satisfy the filing requirements of the PHRA, the charge must be filed with the PHRC, either by plaintiff or cross-filed by the EEOC, within 180 days of the discriminatory act. Id. Therefore, there are two applicable statute of limitations here, a 180–day filing period for PHRA claims . . . and a 300–day period for Title VII claims . . . .

Id. Because Plaintiff's second charge fell outside the 180 day period applicable to retaliation claims raised under the PHRA, it was untimely. [7] Because Plaintiff failed properly to exhaust

---

[7] Although the Court need not reach this argument, the Hospital identifies a second fatal problem with the second charge, which relates to the required exhaustion of administrative remedies. This suit was filed before a year had elapsed from the filing of the second PHRA charge. "The PHRA . . . requires that claims be brought first to . . . the PHRC, which has exclusive jurisdiction over the claim for a period of one year in order to investigate and, if possible, conciliate the matter." Burgh, 251 F.3d at 471. Thus, a Plaintiff is precluded from filing a court action for a period of one year. Even where an administrative charge is cross-filed with the EEOC, "Pennsylvania law grants the PHRC exclusive jurisdiction over the PHRA claims for a period of one year." See Wardlaw v. City of Philadelphia, Civil No. 09-2011, 2011 WL

her administrative remedies with the PHRC, Count III of her Complaint should be dismissed with prejudice.

## III. CONCLUSION

For the reasons set out above, the Court respectfully recommends that Defendant's Motion to Dismiss be granted without prejudice as to Count II and with prejudice as to Count III.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)1)(B) & (C), and Local Rule 72.1.4 B, Objections to this Report and Recommendation are to be filed no later than September 13, 2012. Failure to file timely objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


Respectfully submitted,


/s/ Cynthia Reed Eddy
CYNTHIA REED EDDY
United States Magistrate Judge


Dated: August 30, 2012


cc:     Counsel of Record via CM-ECF

---

1044936, at *3 (E.D. Pa. March 21, 2011) (even where an administrative charge is cross-filed with the EEOC and PHRC pursuant to their work-sharing agreement, "Pennsylvania law grants the PHRC exclusive jurisdiction over the PHRA claims for a period of one year ... and [only] after the expiration of one year, [may] a complainant . . . bring suit"). See also Woodson, 109 F.3d at 926 (same); Clay v. Adv. Computer App., Inc., 559 A.2d 917, 920 (Pa. 1988) (citing 43 Pa. Stat. §962(c) (same)).